IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


Jeffrey C. Ware, et al.,           :

        Plaintiffs,           :

      v.                           :     Case No. 2:15-cv-626

Chesapeake Exploration, L.L.C.,    Magistrate Judge Kemp
    et al.,                      :

        Defendants.          :


<u>OPINION AND ORDER</u>

This action involves a dispute over oil and gas rights.
Plaintiffs, Jeffrey C. Ware, Marci Ware, Bradley C. Ware, and
Linda Ware ("the Wares"), who are property owners in Belmont
County, Ohio, seek a judgment declaring a lease that the Wares
signed to be void, terminated, or otherwise unenforceable.
Defendants are three companies that have or have had an interest
in the lease at issue.  Defendants removed this case from the
Court of Common Pleas for Belmont County, Ohio to this Court on
the basis of diversity jurisdiction.  The parties have consented
to full disposition of this matter by the undersigned Magistrate
Judge pursuant to 28 U.S.C. §636(c).

Currently before the Court for consideration are the Wares'
motion for judicial notice (Doc. 9), a motion to dismiss the
amended complaint filed by defendant Range Resources-Appalachia,
L.L.C. ("Range") (Doc. 15), and defendants Chesapeake
Exploration, L.L.C. ("Chesapeake")'s and Statoil USA Onshore
Properties, Inc. ("Statoil")'s motion to dismiss (Doc. 16).  For
the reasons set forth below, the motion for judicial notice will
be denied (Doc. 9), Range's motion to dismiss the amended
complaint will be granted (Doc. 15), and the remaining motion to

dismiss will be denied (Doc. 16).

I. <u>Background</u>

The following background summarizes the allegations in the amended complaint.  The Wares owned property on which they ran the Ware Family Farm.  On approximately March 5 or 6, 2008, a woman with the last name of Burkhart approached the Wares and told them that their neighbors had signed a lease with Range, and that the lease permitted Range to take oil and gas from underneath the Wares' property without them paying for it.  Ms. Burkhart stated that if the Wares wanted to be paid for their oil and gas, they should sign a lease with Range.  The Wares believed and relied on Ms. Burkhart's statements because they believed she had special knowledge of the oil and gas industry.

On March 9, 2008, three or four days after Ms. Burkhart's representations and in reliance on those representations, the Wares and Plaintiff Linda Ware's now-deceased husband signed a lease with Range covering 207.31 acres in Pease Township, Belmont County, Ohio (the "Lease").  The Lease contains the following provisions relevant to this dispute:

> 2. This lease shall continue in force and the rights granted hereunder be quietly enjoyed by the Lessee for the term of **Five (5)** years and so much longer thereafter as oil, gas, and/or coalbed methane gas or their constituents are produced or capable of being produced on the premises in paying quantities, in the judgment of the Lessee, or as the premises shall be operated by the Lessee in search for oil, gas and/or coalbed methane gas and as provided in Paragraph 7 following.

> * * *

> 19. ... **Upon the expiration of the primary term of this lease and within sixty (60) days thereinafter, Lessor shall grant to Lessee an option to extend or renew this lease for an additional five (5) year period.  Lessee shall pay to Lessor a one time payment equal to $150.00 per acre should Lessee exercise its option to extend or**

2

**renew this lease.**

(Doc. 7, Ex. A) (emphasis in original). Further, an addendum to the Lease provides, in pertinent part:

> 15. Should lessee drill an initial well utilizing the leased premises within the primary term of this lease (the "Initial Well"), Lessee shall endeavor to drill a minimum of one (1) well in each subsequent eighteen (18) month period on the leased premises or on a unit utilizing the leased premises. Should Lessee elect not to commence the drilling of the Initial Well or any subsequent well, this lease shall terminate as to all of the undrilled acreage....

Id., Ex, B.

On March 8, 2013, before obtaining any legal interest in the Lease, Chesapeake signed and filed a notice of extension of the Lease. Approximately nine months later, on December 3, 2013, a representative of Range signed an assignment and conveyance of the Lease to Chesapeake.

On July 16, 2014, counsel for the Wares wrote a letter to Chesapeake enclosing a check for $20,731.00 "represent[ing] all the money the Wares have received as payment for any bonus money and any delay rentals on this lease." Id., Ex. C. On July 22, 2014, Chesapeake cashed the check. At some point, Statoil was assigned a 22.635% interest in the Lease. As of the time the amended complaint was filed, "[n]o well has been commenced or been drilled on this property or on any property pooled with this property...." Id. at ¶11. The Lease has prevented the Wares from negotiating with other companies or individuals to obtain better terms for lease of the property.

In their first claim, the Wares allege that they improperly relied on the false, misleading, and fraudulent statements made by Ms. Burkhart when they signed the Lease and the addendum to the Lease. According to the Wares, the fraud renders the Lease void. In their second claim, the Wares allege that the language

in paragraph 2 of the Lease renders it a "no-term" or "perpetual" Lease, which is void as against public policy. In their third claim, the Wares allege that, consistent with paragraph 15 of the Lease, the Lease expired at the end of the primary term on March 9, 2013 because all of the acreage remained undrilled. In their fourth claim, the Wares allege that all of the money they received from the defendants was returned to Chesapeake in the form of a check with an accompanying letter explaining that the Lease was a perpetual lease in violation of public policy. The letter also explained that the Lease expired at the end of the primary term because all acreage remained undrilled. The Wares allege that "[b]y cashing the check, Chesapeake accepted and confirmed the contents of the letter and agreed that said Lease had terminated by its terms." Id. at ¶14. Finally, in their fifth claim, the Wares allege that Chesapeake's attempt to extend the Lease was a nullity because Chesapeake lacked the authority to file such an extension. Consequently, the Wares again allege the Lease expired at the end of the primary term on March 9, 2013. Based on the foregoing, the Wares demand judgment against the defendants and request that this "Court declare the Lease terminated at the end of the primary term and/or that said Lease is invalid, void and unenforceable, and order the Defendants to release the Lease of record, or issue an order which can be filed with the Belmont County Recorder showing that said Lease is invalid, void and unenforceable." Id. at 6.

## II. Discussion

As an initial matter, the Court will address the Ware's motion for judicial notice. (Doc. 9). After doing so, the Court will address Range's motion to dismiss. (Doc. 15). Finally, the Court will consider Chesapeake and Statoil's motion to dismiss. (Doc. 16).

### A. Motion For Judicial Notice

The Court first considers the Wares' motion for judicial notice.  Specifically, the Wares have moved this Court to take judicial notice, pursuant to Rule 201 of the Federal Rules of Evidence, of Section 1501;9-1-01 (General Provisions) and Section 1501;9-1-04 (Spacing of Wells) of the Ohio Administrative Code.  The memorandum in support of the Wares' motion, in its totality, provides:

> Rule 201 of the Federal Rules of Evidence provides for this Court to take Judicial Notice of certain facts.  The Ohio Administrative Code meets the requirements of Rule 201, in that, under Section B of said Rule, these facts are not subject to reasonable dispute in that they are capable of accurate and ready determination by resort sources [sic] whose accuracy cannot reasonably be questioned.  Plaintiffs have highlighted O.A.C. 1501;0-01-04 [sic], Section C, for the convenience of the Court, as that Section applies directly to subject case.

(Doc. 9 at 3).  The Wares attached the relevant portions of the Ohio Administrative Code to the motion.

Historically, judges have taken judicial notice of state statutes when necessary.  See United States v. Dedman, 527 F.3d 577 (6th Cir. 2008).  As the Court of Appeals has explained, taking judicial notice of state statutes "was an evidentiary shortcut whereby courts could rely upon the law of other states without jumping through the evidentiary hoops of bringing the bound volumes into court and establishing their validity."  Id. at 586.  Courts today still "take judicial notice of state statutes and regulations where relevant."  Redmond v. The Jockey Club, 2007 WL 2250978, at *7 (6th Cir. Aug. 2, 2007), citing Val Decker Packing Co. v. Corn Prods. Sales Co., 411 F.2d 850, 852 (6th Cir. 1969).  The Court of Appeals has referred to this as taking "judicial notice of the law."  Dedman, 527 F.3d at n.3.

In their motion, the Wares move this Court to accept the relevant sections of the Ohio Administrative Code "as the facts

of this case." (Doc. 9 at 2). As the Court of Appeals has explained, Fed. R. of Evid. 201 applies to "adjudicative facts and does not cover a court's determination of law." <u>Dedman</u>, 527 F.3d at 587-88. Consequently, the Court will deny the Wares' motion to take judicial notice of portions of the Ohio Administrative Code as facts. Stated another way, because the Ohio Administrative Code is law and not fact, the Court will deny the motion. However, the Court will take judicial notice of state law where relevant.

B. <u>Motions To Dismiss</u>

i. <u>Legal Standard</u>

A motion to dismiss under Fed. R. Civ. P 12(b)(6) should not be granted if the complaint contains "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). All well-pleaded factual allegations must be taken as true and be construed most favorably toward the non-movant. <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974); <u>Gunasekera v. Irwin</u>, 551 F.3d 461, 466 (6th Cir. 2009). Rule 8(a) admonishes the Court to look only for a "short and plain statement of the claim," however, rather than requiring the pleading of specific facts. <u>Erickson v. Pardus</u>, 551 U.S. 89 (2007).

A 12(b)(6) motion to dismiss is directed solely to the complaint and any exhibits attached to it. <u>Roth Steel Prods. v. Sharon Steel Corp.</u>, 705 F.2d 134, 155 (6th Cir. 1983). The merits of the claims set forth in the complaint are not at issue on a motion to dismiss for failure to state a claim. Consequently, a complaint will be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) only if there is no law to support the claims made, or if the facts alleged are insufficient to state a claim, or if on the face of the complaint there is an insurmountable bar to relief. <u>See Rauch v. Day & Night Mfg. Corp.</u>, 576 F.2d 697,

6

702 (6th Cir. 1978).

Rule 12 (b)(6) must be read in conjunction with Fed. R. Civ. P. 8(a) which provides that a pleading for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." 5A Wright & Miller, Federal Practice and Procedure § 1356 (1990). The moving party is entitled to relief only when the complaint fails to meet this liberal standard. Id.

On the other hand, more than bare assertions of legal conclusions is required to satisfy the notice pleading standard. Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988). "In practice, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." Id. (emphasis in original, quotes omitted). As stated by the First Circuit and cited approvingly by Scheid:

> [w]e are not holding the pleader to an impossibly high standard; we recognize the policies behind rule 8 and the concept of notice pleading. A plaintiff will not be thrown out of court for failing to plead facts in support of every arcane element of his claim. But when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist.

Id. It is with these standards in mind that the motions to dismiss will be decided.

### ii. Range's Motion To Dismiss

On March 26, 2015, Range filed a motion to dismiss the amended complaint. In its motion, Range argues that the Wares do not have a viable declaratory claim judgment against it because it has assigned all of its right, title, and interest in the Lease to Chesapeake and Statoil. Consequently, Range asserts that any declaratory judgment issued by this Court would have no impact on its rights or obligations under the Lease. Range

7

further argues that the amended complaint fails as a matter of law because "(a) Plaintiffs cannot prove fraud with respect to the claimed misrepresentations about being able to 'take' Plaintiffs' natural gas, (b) Ohio law makes clear that the lease is not a perpetual, 'no-term lease' that is against public policy, and (c) Plaintiff's third, fourth, and fifth claims relate to facts arising after the assignment by Range to Chesapeake when Range had no right, duties or obligations under the Lease." (Doc. 15 at 1-2).

This Court first examines Range's claim that it relinquished any right, title, or interest in the Lease when it executed a valid assignment of the Lease.  Range attaches the assignment to its motion to dismiss.  The Wares do not dispute the validity of the assignment.  Instead, they claim that certain provisions in that assignment reserved Range's "substantial rights and interests in the lease." (Doc. 20 at 11).  The Wares first point to paragraph 2 of the assignment, which states:

> Assignor specifically excepts from this Assignment and reserves to Assignor the following ("Excluded Assets"):
>
> 2.1  All partnership, limited liability company, financial, tax, and legal (other than title) records of Assignor and all of Assignor's formation documents, resolutions and similar governance documents;
>
> 2.2  Any existing or future refund of costs, Taxes, or expenses borne by Assignor or Assignor's predecessors in title attributable to the period prior to the Effective Time;
>
> 2.3  Any and all proceeds from production and from the settlements of contract disputes with purchasers of Hydrocarbons or byproducts from the Leases, including, without limitation, settlement of any take-or-pay disputes, insofar as said proceeds are attributable to periods of time prior to the Effective Time;

2.4 All rights and interests of Assignor (i) under any policy or agreement of insurance or indemnity (including, without limitation, any rights, claims or causes of action of Assignor against third parties under any indemnities or hold harmless agreements and any indemnities received in connection with Assignor's prior acquisition of any of the Properties) to the extent and only to the extent such right and interests relate to the ownership of the Properties prior to the Effective Date and (ii) under any bond;

2.5 All Hydrocarbons produced and sold from the Leases with respect to all periods prior to the Effective Time and all proceeds from the disposition thereof;

2.6 All of Assignor's proprietary computer software, patents, trade secrets, copyrights, names, trademarks, logos and other intellectual property;

2.7 All accounts receivable and audit rights arising under any of the applicable contracts or otherwise with respect to the Leases for any period prior to the Effective Time or to any of the Excluded Assets;

2.8 All claims of the Assignor for refunds of or loss carry forwards with respect to (i) production or any other taxes attributable to any period prior to the Effective Time, (ii) income or franchise taxes or (iii) any taxes attributable to the Excluded Assets;

2.9 All "virtual courthouses" of the Assignor, Assignor's exclusive use arrangements with title abstract facilities and all documents and instruments of Assignor that may be protected by an attorney-client privilege and all data that cannot be disclosed to Assignee as a result of confidentiality arrangements under agreements with third parties; and

2.10 All geological and geophysical information including seismic data, studies and other information about the property subject to the Leases.

2.11 All right, title and interest in and to (i) the

9

> Leases and other Properties insofar as such Leased Properties are located within or related to the drilling and spacing unit of the Cutri Unit #1 located in Steubenville Township, Jefferson County, Ohio and the Georgetown Marine Unit located in Pultney Township, Belmont County, Ohio, and (ii) the well bores of the Cutri Unit #1, API No. 340812048700, and the Georgetown Marine #1 SWIW, API No. 340132061100, and any future wells drilled in the Cutri Unit #1 or the Georgetown Marine Unit.

(Doc. 15, Ex. 1 at 3). The Wares also argue the following:

> the assignment states "TO HAVE AND TO HOLD" unto assignee "subject to the following matters." Items (a) through (k) are listed setting forth all matters which are subject to the assignment. Royalties and overriding royalties are specifically made subject to the assignment. The assignment further states on Page 5 as follows:

> Assignor hereby retains all revenues, losses, claims, liabilities, demands, costs and expenses in connection with the Properties with respect to any period or portion thereof prior to the Effective Time and further retains the Retained Liabilities under the Agreement.

(Doc. 20 at 11-12). According to the Wares, these assignment provisions reflect that "[a]ll property rights were not acquired by the assignee and the rights of the assignor are not extinguished." Id. at 12.

First, the Court notes that it may properly consider the assignment without converting the motion to dismiss into a motion for summary judgment. Where, as here, a document is "referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." Commercial Money Center, Inc. v. Illinois Union Ins. Co., 508 F.3d 329, 336 (6th Cir. 2007); see also Bassett v. Nat'l Collegiate Athletic Ass'n, 528 F.3d 426, 430 (6th Cir. 2008)("When a court is presented with a Rule 12(b)(6) motion, it may consider ... exhibits attached to defendant's

motion to dismiss so long as they are referred to in the
Complaint and are central to the claims contained therein").

In the assignment, Range "GRANTS, BARGAINS, SELLS, CONVEYS,
ASSIGNS, TRANSFERS AND DELIVERS ... all of [its] right, title and
interest in and to all oil, gas and mineral leases, operating
rights, working interests, and net revenue interested located in
Belmont County, Ohio...." (Doc. 15, Ex. 1 at ¶1)(emphasis
added). More specifically, Range assigned 77.365% of its
interest to Chesapeake and 22.635% of its interest to Statoil,
thus resulting in the assignment of 100% of its interest. Based
upon this assignment, Range has no remaining interest in the
Lease.

This determination is consistent with the Court's decision
in Feisley Farms Family, L.P. v. Hess Ohio Resources, LLC., 2014
WL 4206487 (S.D. Ohio Aug. 25, 2014). There, the Court found
that the defendant had no remaining interest in the lease
because, in the assignment, the defendant had granted, conveyed,
sold, assigned, and transferred "all of [its] right[,] title, and
interest, in and to the oil and gas leases and land described."
Id. at *3. The Feisley Farms Family Court found this conclusion
to be supported by the prior decision of Cameron v. Hess Corp.,
2013 WL 5366107, at *11-12 (S.D. Ohio Sept. 24, 2013). The
Feisley Farms Family Court quoted the Cameron decision as
follows:

> In assigning the Griffiths and Cameron Leases,
> however, Mason Dixon extinguished all of its rights in
> those contracts under Ohio law. In alienating property
> via an assignment, the assignee "acquires" all attendant
> property rights, and the rights of the assignor are
> "extinguished." 6 Am. Jur.2d, Assignments §1 (2012) ("an
> assignment of a right is a manifestation of the
> assignor's intention to transfer it by virtue of which
> the assignor's right to performance by the obligor is
> extinguished ... and the assignee acquires a right to
> such performance...."); W. Broad Chiropractic v. Am.
> Family Ins., 122 Ohio St.3d 497, 912 N.E.2d 1093, 1095

11

(2009)("An assignment is a transfer to another of all or part of one's property in exchange for valuable consideration").  As a result, "an assignee ... stands in the shoes of the assignor ..., and succeeds to all the rights and remedies of the latter."  Inter Ins. Exch. of Chi. Motor Club v. Wagstaff, 144 Ohio St. 457, 59 N.E.2d 373, 375 (1945)(citing 3 Ohio Jurisprudence, 275, §32; 38 Ohio Jurisprudence, 300, §51; 4 American Jurisprudence, 321, §115; 50 American Jurisprudence, 752, §110; 6 C.J.S., Assignments, §85, p. 1142.).  Thus, here, in assigning the Griffiths and Cameron Leases, Mason Dixon has no remaining interests in the leaseholds that might be adjudicated in Plaintiffs' declaratory judgment action.  See Ford Motor Credit Co. v. Ryan, 189 Ohio App.3d 560, 939 N.E.2d 891, 921 (2010)(affirming summary judgment for defendant on breach of contract claims because defendant had assigned its interest in the contract to another party).

Plaintiffs counter that Mason Dixon has not actually extinguished all interests in the Griffiths and Cameron Leases because the operable assignments contained a warranty by which the lease's assignees could require Mason Dixon, under certain circumstances, to "defend title to the interest conveyed [by the assignment] against the claims and demands of all persons whomsoever claiming or attempting to claim the same...."  This warranty provision concerns the rights of assignees Marquette and Hess relative to Mason Dixon, and speaks not at all to any rights Plaintiffs may have relative to Mason Dixon, or vice versa.

Id. at *3-4 (alteration in original), quoting Cameron, 2013 WL 5366107, at *11-12.

Here, the Excluded Assets do not result in Range retaining substantial rights and interests in the Lease.  They pertain to Range retaining rights in other assets, not the Lease itself, such as governance documents, interests in insurance or indemnity policies, computer software, intellectual property, and geological or geophysical information.  The only arguable basis for asserting that those provisions result in the preservation of Range's rights in the Lease arises under paragraph 2.5, which addresses hydrocarbons produced or sold prior to the Effective

12

Time.  The facts as alleged by the Wares, however, reflect that no drilling took place prior to the effective date of the assignment, which was October 1, 2011.  Accordingly, paragraph 2.5 does not result in Range's retaining any rights in the Lease. Similarly, the additional provisions cited by the Wares do not result in Range's retaining any rights under the Lease.  As set forth in the amended complaint, Range did not develop the property prior to the effective date.  Consequently, there were no liabilities, royalties, or overriding royalties, nor were there any "revenues, losses, claims, liabilities, demands, costs, or expenses, or any of the other interests referenced by Plaintiffs." (Doc. 23 at 3-4) (internal quotations omitted). Based on the foregoing, the Court will grant Range's motion to dismiss on the ground that there is no justiciable controversy between it and the Wares.  Consistent with this decision, the Court need not consider the additional arguments set forth by Range in its motion to dismiss.  The Court now turns to the motion to dismiss filed by Chesapeake and Statoil.

iii. <u>Chesapeake And Statoil's Motion To Dismiss</u>

In their motion to dismiss, Cheapeake and Statoil argue that the Wares fail to state a fraud claim, the Lease does not have a perpetual term, and the option to extend is enforceable.

a. <u>The Fraud Claim</u>

The elements of a claim of fraud under Ohio law are:

(1) a representation or, where a duty to disclose exists, concealment of a fact, (2) which is material to the agreement in question, (3) made falsely, with knowledge of its falsity, or with complete disregard as to its truthfulness, (4) with the intent to mislead another into relying upon it, (5) justifiable reliance upon the representation or concealment, and (6) resulting harm proximately caused by the reliance.

<u>Reed v. Vickery</u>, 2009 WL 3276648, at *6 (S.D. Ohio Oct. 9, 2009), citing <u>Burr v. Board of County Com'rs of Stark County</u>, 23 Ohio

St.3d 69, 491 N.E.2d 1101 at syllabus ¶2 (1986).  The elements of
fraudulent inducement are essentially the same as those for
fraud.  Id., citing Gentile v. Ristas, 160 Ohio App.3d 765, 781,
828 N.E.2d 1021 (Franklin Co. 2005).  Chesapeake and Statoil
assert four reasons why the Wares' fraud claim fails as a matter
of law.  First, Chesapeake and Statoil argue that Ms. Burkhart's
statements pertain to a "non-actionable conclusion of law."
(Doc. 21 at 3).  Second, Chesapeake and Statoil argue that Ms.
Burkhart's statements were true.  Third, Chesapeake and Statoil
assert that Ms. Burkhart's statements "relate to a non-actionable
future act."  Id.  Finally, Chesapeake and Statoil contend that
the fraud claim is time-barred because "the statements were made
prior to the signing of the Lease in 2008, and the lawsuit was
not brought until 2015."  Id.  The Court examines these arguments
in turn.

> (i). Whether Ms. Burkhart's Statements Pertained To Law

In their motion to dismiss, Chesapeake and Statoil first
argue that the claim for fraud fails to allege an actionable
misrepresentation.  More specifically, Chesapeake and Statoil
argue that the statements alleged to be made by Ms. Burkhart were
representations about the law.  According to Chesapeake and
Statoil, "[i]t is a longstanding principle that a party has no
right to rely on a representation about what the law will allow,
and if one does so rely, 'it is his folly, and he can not ask the
law to relieve him from the consequences.'" (Doc. 16 at 5),
quoting Aetna Ins. Co. v. Reed, 33 Ohio St. 283, 288 (Ohio 1877).

While the statement of relevant law set forth by Chesapeake
and Statoil is correct in that representations about the law
generally may not the basis for a fraud claim, the Court finds
that the statements at issue include representations of both fact
and law.  According to the amended complaint, Ms. Burkhart
approached the Wares and told them that their neighbors had

14

signed a lease with Range, and that the lease permitted Range to take oil and gas from the Wares without paying for it. Ms. Burkhart stated that if the Wares wanted to be paid for their oil and gas, they should sign a lease with Range. Under the rule of capture, Ms. Burkhart's statements could only be true if there were oil or gas on the Wares' property that could physically migrate from the Wares' property to their neighbor's property if defendants were drilling vertically and complying with well spacing regulations. See Yoder v. Stocker & Sitler Oil Co., 1995 WL 615954, at *7 (Ohio Ct. App. Sept. 11, 1995) (defining rule of capture). Because that is a factual representation rather than a legal representation, the Court will not grant the motion to dismiss on the basis that the statement pertained solely to an issue of law.

(ii). <u>Whether Ms. Burkhart's Statements Were True</u>

Next, Chesapeake and Statoil argue that the amended complaint fails to state a fraud claim because Ms. Burkhart's statements were true. The Wares allege that Ms. Burkhart's statements were "untrue, misleading, and fraudulent, because the Ohio Rule of Capture is not effective in the Utica Shale play." (Doc. 7 at ¶6). The Wares agree that the statements she made might be accurate for types of oil and gas extraction other than development of Marcellus or Utica shale. (Doc. 19 at 9-10); see Yoder, 1995 WL 615954, at *7. However, the Wares allege that the only type of oil and gas extraction at issue is development of Utica shale and that Ms. Burkhart's statements are a physical impossibility if the defendants follow the rule of capture and the well spacing regulations. Accordingly, the Wares allege that the statements were false.

At this stage of the litigation, the Court must accept all well-pleaded factual allegations as true and construe those allegations most favorably toward the Wares. Because the Wares'

15

allegations that Ms. Burkhart's statements were false are plausible, the Court will not dismiss the Wares' fraud claim on this basis.

(iii). <u>Whether Ms. Burkhart's Statements Related To A Future Act</u>

Next, Chespeake and Statoil argue the Wares' fraud claim fails because "the statement that 'Range would take their oil and gas' is a statement of future intention, not a present fact, and thus cannot support a fraud claim." (Doc. 16 at 8). Chesapeake and Statoil are correct that "[r]epresentations concerning what will occur in the future are considered to be predictions and not fraudulent misrepresentations." <u>Association for Responsible Dev. v. Fieldstone L.P. P'ship</u>, 1998 WL 785330 (Ohio App. 2d Dist. Nov. 13, 1998), citing <u>Tibbs v. National Homes Constr. Corp.</u>, 52 Ohio App.2d 281, 286 (1977). However, there is an exception to this rule. The exception occurs when the person "who makes his promise of future action, occurrence, or conduct, and who at the time he makes it, has no intention of keeping his promise. In such case, the requisite misrepresentation of an existing fact is said to be found in the lie as to his existing mental attitude and present intent." <u>Tibbs</u>, 52 Ohio App.2d at 287.

Again, this Court is mindful that, at this stage of the litigation, it must accept all well-pleaded factual allegations as true and construe those allegations most favorably toward the Wares. In the amended complaint, the Wares have sufficiently alleged an actionable mental attitude and intent at the time Ms. Burkhart made the statements. Further, the statements she made can reasonably be construed not as describing some future act but an existing state of affairs – that, as she spoke, the gas under the Wares' property was subject to being extracted without payment. Thus, the Court will not grant the motion to dismiss on this basis.

(iv). <u>Whether The Fraud Claim Is Barred By
The Statute Of Limitations</u>

Chesapeake and Statoil argue that the Wares' fraud claim is barred by the four-year statute of limitations found in Ohio Rev. Code Ann. §2305.09(C) (West). Although claims are not typically dismissed as time barred at the motion to dismiss stage, sometimes doing so is appropriate:

> The statute of limitations is an affirmative defense, see Fed.R.Civ.P. 8(c), and a plaintiff generally need not plead the lack of affirmative defenses to state a valid claim, see Fed. R. Civ. P. 8(a) (requiring "a short and plain statement <u>of the claim</u>" (emphasis added)); <u>Jones v. Bock</u>, 549 U.S. 199, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007). For this reason, a motion under Rule 12(b)(6), which considers only the allegations in the complaint, is generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations. But, sometimes the allegations in the complaint affirmatively show that the claim is time-barred. When that is the case, as it is here, dismissing the claim under Rule 12(b)(6) is appropriate. <u>See Jones</u>, 549 U.S. at 215, 127 S.Ct. 910 ("If the allegations ... show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim[.]").

<u>Cataldo v. U.S. Steel Corp.</u>, 676 F.3d 542, 547 (6th Cir. 2012). The statute of limitations begins to run either from the date the alleged statement was made or the date "the fraud is discovered." Ohio Rev. Code Ann. § 2305.09 (West). "Ohio courts have interpreted this language to mean that the statute of limitations for fraud claims is tolled 'until the plaintiff discovers or, in the exercise of reasonable care, should have discovered the complained-of injury.'" <u>Neff v. Standard Fed. Bank</u>, 2007 WL 2874794, at *5 (S.D. Ohio Sept. 27, 2007), citing <u>Investors REIT One [v. Jacobs]</u>, 46 Ohio St.3d [176], 180 (1989)(emphasis added); accord <u>Helman v. EPL Prolong, Inc.</u>, 139 Ohio App.3d 231, 248 (Ohio Ct. App. 2000).

Here, the complaint in the state action was filed on January

17

15, 2015 (Doc. 1-2), and the alleged statements were made more
than six years earlier – a few days before March 9, 2008. (Doc.
7 at ¶6). The Wares argue that "the fraud was not discovered
until Plaintiffs consulted with an attorney on November 10,
2011." (Doc. 19 at 10-11). The complaint generally alleges that
the Wares believed Ms. Burkhart's statements, had no reason to
question the statements, and relied on the statements. The Wares
were not obligated to plead facts supporting the tolling of the
statute of limitations in their complaint. Accordingly, there
are factual issues relevant to when the Wares discovered or, in
the exercise of reasonable care, should have discovered the
injury. Consequently, Chesapeake and Statoil have not shown that
the Wares fraud claim fails as a matter of law. Thus, the Court
will not grant the motion to dismiss on this basis.

> b. Whether The Lease Has A Perpetual Term

Next, Chesapeake and Statoil argue that the Wares are not
entitled to judgment based on their assertion that the language
in paragraph 2 of the Lease renders it a "no-term" or "perpetual"
Lease, which is void as against public policy. More
specifically, Chesapeake and Statoil state that "Plaintiffs'
claim to invalidate the Lease based on inclusion of the phrase
'in the judgment of the Lessee' fails as a matter of law." (Doc.
16 at 10). Chesapeake and Statoil rely on Hupp v. Beck Energy
Corp., 20 N.E.3d 732 (Ohio Ct. App. 7th Dist. 2014) in support of
their position. The Wares acknowledge that, in Hupp, "the Ohio
Seventh District Court of Appeals ... held that the language did
not result in a no-term perpetual lease that was void against
public policy...." (Doc. 19 at 5). The Wares point out,
however, the Ohio Supreme Court has accepted a discretionary
appeal of that decision. See Heck v. Beck Energy Corp., 141 Ohio
St. 3d 1454 (2015). Thus, the Wares submit that this Court
should defer ruling on this issue until the matter has been

18

resolved by the Ohio Supreme Court.  Because it appears that Ohio Supreme Court's decision in that case will be pertinent to this Court's resolution of this issue, the Court will deny the motion to dismiss on this basis.  The Court will, as raised by the parties, examine this issue at a later time once the matter has been resolved by the Ohio Supreme Court.  See Rutherford v. Columbia Gas, 575 F.3d 616, 625 (6th Cir. 2009)("In diversity cases, we are obliged to apply state law and, therefore, are required to defer to the decisions of state courts").

    c. Whether The Option To Extend The Lease Is Enforceable

Finally, Chesapeake and Statoil assert that the Wares are incorrect in their assertion that the Lease expired at the end of the primary term.  In opposition, the Wares urge that, although Chesapeake attempted to exercise the option to extend the Lease, they rejected that attempt.  In addition to issues of contract interpretation, the motion to dismiss and the related briefs raise factual issues pertaining to Chesapeake's attempt to extend the Lease.  Given that this issue involves a determination of both law and fact, it is better resolved on a motion for summary judgment (or, if the material facts are in dispute, at trial).  Consequently, the Court will not grant the motion to dismiss as to this issue.

### III. Conclusion

Based on the foregoing, the Wares' motion for judicial notice is denied (Doc. 9), Range's motion to dismiss the amended complaint is granted (Doc. 15), and Chesapeake's and Statoil's motion to dismiss the amended complaint is denied (Doc. 16).

/s/ Terence P. Kemp
United States Magistrate Judge